IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| KEITH HENDERSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 13-1119-JWL |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying Supplemental Security Income (SSI) benefits[1] under sections 1602, and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding no error in the Commissioner's decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING that decision.

**I.     Background**

---

[1]Plaintiff applied for both Disability Insurance Benefits (DIB) and SSI. (R. 121-28). After the initial denial, the record no longer mentions DIB. The decision relates only to SSI benefits. Neither party addressed this issue, and Plaintiff's Brief does not allege error in this regard. Therefore, the court will not address the issue.

Plaintiff applied for SSI benefits, alleging disability beginning May 1, 2010. (R. 17, 123-28). In due course, Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits. He claims the Administrative Law Judge (ALJ) erred in evaluating the credibility of his allegations of symptoms resulting from his mental impairments, and in finding that his condition does not meet or medically equal the severity of Listings 12.04 and 12.06.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not

simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's RFC.  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of

past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Although Plaintiff's allegations of error are not organized in the order of the sequential evaluation process, the court finds no error induced by that order of proceeding, and will address the issues in the order presented in Plaintiff's Brief.

## II.     The Credibility Determination

Plaintiff claims the ALJ erred in his credibility determination because he relied upon Plaintiff's activities of daily living to discount Plaintiff's credibility.  (Pl. Br. 23) (apparently quoting from Cobb v. Astrue, 2010 WL 381614 (10th Cir. Feb. 4, 2010); and citing Thompson v. Sullivan, 987 F.2d 1482, 1490 (10th Cir. 1993)).  Based upon Cobb and Thompson Plaintiff argues that minimal or sporadic performance of [activities of daily living] *are generally insufficient to support an adverse credibility finding*."  Id. at 23 (italics in Plaintiff's Brief).  In his Reply Brief, Plaintiff asserts that this error is important because the ALJ thereby ignored substantial evidence, contrary to the requirements of Social Security Ruling (SSR) 96-8p.  (Reply 3).

The Commissioner argues that the ALJ did not place undue reliance on activities of daily living.  She argues that in accordance with the rules, regulations, and case law, and in addition to Plaintiff's activities of daily living the ALJ "articulated several valid

4

reasons for finding Plaintiff's subjective complaints not credible." (Comm'r Br. 7). She points to several factors relied upon by the ALJ to discount Plaintiff's credibility, and argues that the record evidence supports each of these findings. Id. at 9-10.

### A.     Standard for Evaluating a Credibility Determination

The court's review of an ALJ's credibility determination is deferential. It is generally treated as binding on review. Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983). "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence. Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173.

Therefore, in reviewing the ALJ's credibility determinations, the court will usually defer to the ALJ on matters involving witness credibility. Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994); but see Thompson, 987 F.2d at 1490 ("deference is not an absolute rule"). "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" Wilson, 602 F.3d at 1144 (quoting Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)); Hackett, 395 F.3d at 1173 (same).

### B.     Discussion

As Plaintiff quoted at page 22 of his Brief, the ALJ considered Plaintiff's activities and determined that those activities detract from the credibility of Plaintiff's allegations of disabling symptoms:

5

> Further, the claimant daily engages in activities that are inconsistent with a total inability to work.  The claimant testified that his strict daily routine is what keeps him from becoming too depressed or too manic to function.  The undersigned finds that the claimant's carefully constructed daily regimen is evidence that the claimant is capable of performing unskilled work on a remunerative basis.  The claimant described a typical day.  The claimant testified that he wakes at 6 a.m.  He gets up immediately, because if he does not get up and get going right away, he will stay in bed all day.  He testified that [he] does not allow himself to stay in bed all day.  After waking up, he lets his dogs out.  He goes to the recreation center by 8 a.m. where he does a light weight workout and easy cardio to manage his mood.  At approximately 9:30 a.m., he goes home, runs errands for his mother and does chores around the house.  He makes a simple lunch.  In the afternoon, he goes to a yoga class and then swims laps in the pool.  The claimant then goes home and fixes a quick meal.  In the early evening, he feeds the dogs and horses.  He watches television and goes to bed at 9 p.m.  He testified that his exercise regimen and daily routine are very helpful in relieving his symptoms.  This routine, which is frankly not unlike a daily work routine, indicates that the claimant has the ability to manage his symptoms effectively, further indicating that the claimant is capable of performing unskilled remunerative work (albeit with social limitations as stated above).

(R. 23).  Plaintiff takes particular exception to the last sentence of the ALJ's discussion, arguing that the ALJ's conclusion is merely speculation that Plaintiff can perform remunerative work, and is not verified by vocational expert testimony.  (Pl. Br. 22-23).

Plaintiff's Brief completely ignores that the ALJ gave three other reasons to discount Plaintiff's allegations--that Plaintiff was not receiving mental health treatment, that Plaintiff's most recent mental status exam revealed only minor problems in mental functioning, and that Plaintiff's treating physicians have not identified specific limitations or objective findings which would preclude performance of unskilled work on a sustained basis.  The court's review reveals that each of these reasons is supported by record evidence, and it accepts them as substantial record evidence supporting the ALJ's finding

that Plaintiff's allegations are not credible. The remaining questions then are whether the ALJ's consideration of Plaintiff's daily activities is erroneous and, if so, whether that error precludes the finding that Plaintiff's allegations are not credible.

The court finds no error. The discussion is based upon testimony regarding Plaintiff's daily activities, and is supported by that testimony. Plaintiff testified that he is regimented in his daily activities. (R. 44). He is "disciplined enough to do what I need to do to make myself have some energy. I mean I make myself get up and go swim laps because I know if I don't I won't get out of bed that day. I can't let that start happening." (R. 45). And, each of the daily activities noted by the ALJ is confirmed by Plaintiff's testimony when recounting how he has organized his regimented day. (R. 48-52).

Further, it is important to note that the ALJ did not say that Plaintiff's daily activities are equivalent to working eight hours a day, five days a week. Rather, the only impairments alleged by Plaintiff are mental impairments, and the ALJ recognized that Plaintiff's daily regimen is similar to a daily work routine, and indicates that Plaintiff is able to organize his day into a routine to manage his mental impairments. The ALJ found that this ability would also allow Plaintiff to manage his mental symptoms effectively around the routine of a work day, and thereby perform unskilled, remunerative work. That is the significance of the last sentence of the ALJ's discussion to which Plaintiff takes "great exception."

Plaintiff's argument that the ALJ's conclusion is merely speculation unverified by vocational expert testimony, misunderstands both the law and the rationale of the ALJ's

discussion.  While an ALJ's decision may not be mere speculation, and must be reasoned and based upon the evidence in the record, he is not limited merely to conclusions contained in the record that have been expressed by a medical expert, a vocational expert, or some other authority.  For it is the ALJ who "is charged with determining a claimant's RFC from the medical record."  Howard v. Barnhart, 379 F.3d 945, 949 (10th Cir. 2004).  "And the ALJ's RFC assessment is an administrative, rather than a medical determination."  McDonald v. Astrue, 492 F. App'x 875, 885 (10th Cir. 2012) (citing Social Security Ruling (SSR) 96-05p, 1996 WL 374183, at *5 (July 1996)).  Because RFC assessment is made based on "all of the evidence in the record, not only the medical evidence, [it is] well within the province of the ALJ."  Dixon v. Apfel, No. 98-5167, 1999 WL 651389, at **2 (10th Cir. Aug. 26, 1999); 20 C.F.R. §§ 404.1545(a), 416.945(a).  The same principle applies to an ALJ's consideration of the evidence in reaching conclusions regarding credibility.  Here, the record supports the evidence discussed and relied upon by the ALJ in considering Plaintiff's activities of daily living.  Moreover, the ALJ's conclusion is supported by and rationally follows from the record evidence relied upon.  Therefore, his rationale is a proper basis, along with the other three reasons given, to discount the credibility of Plaintiff's allegations.

The cases cited by Plaintiff do not require a different conclusion.  In Cobb, the Plaintiff claimed that the ALJ applied an incorrect legal standard to the credibility determination because the ALJ stated that Ms. Cobb's ability to perform activities of daily living "to any degree suggests that she retains some capacity to perform activities

8

. . . in a work environment." Cobb, 2010 WL 381614, at *5 (emphasis in original).  The court noted that the district court calculated that Ms. Cobb's daily activities consisted of 31-54 hours weekly of seated activities and 7-14 hours weekly of standing activities and found that the extent of Ms Cobb's activities set her case apart from cases such as Thompson which have held that minimal or sporadic performance of activities of daily living is an insufficient basis for an adverse credibility finding.  Id.  The court noted, moreover, that the ALJ did not state that Ms. Cobb's ability to perform activities of daily living meant that she was able to perform sustained work activities.  It found the ALJ's use of the phrase "to any degree" relatively benign, and affirmed the district court's decision which had affirmed the ALJ's decision.  Id.

In Thompson, the court noted that an "ALJ may not rely on minimal daily activities as substantial evidence that a claimant does not suffer disabling pain," and that the "sporadic performance of household tasks or work does not establish that a person is capable of engaging substantial gainful activity."  987 F.2d at 1490 (citing and quoting Frey v. Bowen, 816 F.2d 508, 516-17 (10th Cir. 1987)) (brackets omitted).  In this case, the ALJ was not relying on Plaintiff's daily routine to suggest that Plaintiff does not suffer disabling pain--pain is not even an issue in this case.  Nor was Plaintiff's daily routine used to establish that Plaintiff is capable of performing substantial gainful activity.  Rather, the ALJ was relying on Plaintiff's daily routine to show that Plaintiff has the mental ability to manage his mental symptoms effectively around the routine of a work day, and thereby to perform unskilled, remunerative work.

Plaintiff's argument in his reply Brief that the ALJ ignored substantial evidence in his credibility determination is without merit to change the court's finding.  Plaintiff does not point to any evidence which was ignored by the ALJ.  Much more, he does not explain how such evidence would preclude the ALJ's finding that Plaintiff's allegations of disabling symptoms are not credible.  Plaintiff has shown no error in the credibility determination.

### III.     Listings 12.04 and 12.06

In his final claim of error, Plaintiff alleges that his mental condition meets mental Listing 12.04 and/or Listing 12.06.  This is so, in Plaintiff's view, because his testimony establishes that he has a "marked" limitation in activities of daily living, and the Global Assessment of Functioning (GAF) score of 50 consistently assigned by his mental healthcare providers at COMCARE of Sedgwick County "could serve the purpose of defining a marked impairment in social or occupational functioning."  (Pl. Br. 25).

Implicit in Plaintiff's argument is the regulatory requirement that in order to meet the "paragraph B" criteria of Listing 12.04 or 12.06, Plaintiff's condition must result in "at least two of the following:

    1.  Marked restriction of activities of daily living; or

    2.  Marked difficulties in maintaining social functioning; or

    3.  Marked difficulties in maintaining concentration, persistence, or pace; or

    4.  Repeated episodes of decompensation, each of extended duration."  20 C.F.R., Pt. 404, Subpt. P., App. 1 §§ 12.04B, 12.06B.  Plaintiff "has the burden at step three of

demonstrating, through medical evidence, that his impairments 'meet all of the specified medical criteria' contained in a particular listing." Riddle v. Halter, No. 00-7043, 2001 WL 282344 at *1 (10th Cir. Mar. 22, 2001) (quoting Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis in Zebley)).  "An impairment that manifests only some of [the listing] criteria, no matter how severely, does not qualify" to meet the listing.  Zebley, 493 U.S. at 530.

But, Plaintiff does not establish that he meets two of the four "paragraph B" criteria for the mental listings at issue here.  First, the court has already determined that Plaintiff has shown no error in the ALJ's credibility finding that Plaintiff's allegations are not credible.  Therefore, Plaintiff cannot show through his testimony that he has "marked" limitations in activities of daily living.

Moreover, Plaintiff's argument that his GAF score of 50 "could serve the purpose of defining a marked impairment in social or occupational functioning," is without merit.  As Plaintiff points out in his Brief, a GAF score of 41-50 indicates "**Serious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) **OR any serious impairment in social, occupational, or school functioning** (e.g., no friends, unable to keep a job)."  Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) 34 (4th ed. text revision 2000).  While a GAF score of 50 at least conceivably could define a marked impairment in social or occupational functioning, Plaintiff makes no attempt to explain how a serious impairment in social, occupational, or school functioning as stated in the DSM might be equivalent to a marked difficulty in

11

maintaining social functioning <u>or</u> to a <u>marked difficulty</u> in maintaining concentration, persistence, or pace as required by the regulations.  Plaintiff simply has provided no legal or evidentiary link between his proposition and the result which he would like to achieve.

Therefore, Plaintiff's argument that the ALJ erred in relying on case law other than that of the Tenth Circuit when discounting the GAF score of 50 assigned by Plaintiff's mental healthcare providers is irrelevant to the decision at issue.  Moreover, even when the court considers the failure to discuss Tenth Circuit law it finds no error in the ALJ's decision.  As the Commissioner admits "it would have been more appropriate for the ALJ to cite Tenth Circuit precedent in this case."  (Comm'r Br. 6-7).  However, as the Commissioner also points out, Tenth Circuit precedent does not require a finding of disability merely because of a GAF score of 50.  <u>Id.</u> at 7 (citing <u>Lee v. Barnhart</u>, 117 Fed. App'x. 674, 678 (10th Cir. 2004)).

In <u>Lee</u>, the ALJ determined at step two of the sequential evaluation process that Mr. Lee did not have a "severe impairment" within the meaning of the Social Security regulations, and he denied Mr. Lee's application for benefits.  <u>Lee</u>, 117 Fed. App'x at 676.  The court noted that in Mr. Lee's case the ALJ did very little of the mental impairment analysis required by the regulations, and that he provided no consideration of a GAF score of 48 assigned to Mr. Lee by a physician who provided a report of a consultative examination performed on Mr. Lee.  <u>Id.</u> at 678.  The court recognized that a GAF score of 50 or below, standing alone, does not establish an inability to work because it might be assigned as the result of impairments solely within the social rather than the

occupational sphere.  Id.  However, the court recognized that the question at step two of the sequential evaluation process is whether the plaintiff's mental impairment has more than a minimal effect on the ability to perform basic mental work abilities, and that a GAF score of 50 or less "does suggest an inability to keep a job."  Id.  Therefore, the court held that in a case such as Lee, decided at step two, a GAF score below 50 should not be ignored.  Id.

Thus, Tenth Circuit precedent as presented in Lee recognizes that when a case is decided at step two, a GAF score of 50 or less should not be ignored.  But, as Lee also specifically recognized, "[s]tanding alone, a low GAF score does not necessarily evidence an impairment seriously interfering with a claimant's ability to work."  Lee, 117 Fed. App'x at 678.  Therefore, Plainiff has shown no error in the ALJ's determination to discount the GAF score of 50 assigned to Plaintiff, or in his determination that Plaintiff's mental impairment does not meet Listing 12.04 or Listing 12.06.

The court finds no error in the Commissioner's decision denying benefits.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING that decision.

Dated this 1st day of July 2014, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**

13